NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

SADIE KATTACK, PETITIONER, v. WRIGHT AERONAU-
TICAL CORP., RESPONDENT.

Decided February 14, 1942.

For the petitioner, *Ward & McGinnis* (*Nathan Rabinowitz,*
of counsel).

For the respondent, *John W. Taylor.*

\*        \*        \*        \*        \*        \*        \*

The present proceeding is grounded upon a claim arising
from the death of Najeib Kattack, husband of the petitioner
and father of her ten children, seven of whom are under the
age of sixteen years. The issue in controversy is limited
to a single question, to wit: Did Kattack's death on July
31st, 1940, following a coronary attack on that day, result
from an accident on July 23d, 1940, arising out of and in
the course of his employment with the respondent, Wright
Aeronautical Corporation.

The burden of proof rests upon the petitioner to establish
her right to compensation. The rule applicable to the present
case is clearly and succinctly stated by Mr. Justice Trenchard
in *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, that
"the burden of proof of furnishing evidence from which the
inference can be legitimately drawn that the death of an

employee was caused by 'an accident arising out of and in the course of his employment' rests upon the claimant."

Such burden of proof, however, is not discharged if the evidence is as consistent with the theory that the death was due to natural causes, as that it was due to an accident. An award of compensation or judgment cannot rest upon imagination, surmise or conjecture, or upon a choice between two views equally compatible with the evidence. The court, in the final analysis, cannot speculate as to which of several causes may have produced the death of an employee. See *Curran* v. *Newark Gear Cutting Machine Co.,* 37 *N. J. L.* 21; *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *Id.* 533; 6 *Atl. Rep.* (*2d*) 213.

The proofs in this case are barren of a single scintilla of evidence which tends to establish that Kattack's death was due to an accident, compensable or otherwise, while in the respondent's employ. The evidence discloses without dispute that for three months prior to July 23d, 1940, Kattack had been unemployed, part of which period he spent in convalescing from a siege of pneumonia contracted during the month of May of that year; that on July 23d, 1940, he was hired by the respondent to work at its Paterson plant in the remelt department as a foundry helper; and that he reported for duty on that day and worked on the 5:00 P. M. to 1:30 A. M. shift. The foundry-room in which the petitioner worked was a large well ventilated room in the basement, and contained two oil-burning furnaces for the remelting of scrap-aluminum. The duties of a foundry helper, in which capacity Kattack served, consisted of collecting scraps of aluminum in wooden boxes from the various departments on the upper floors of the respondent's plant; conveying the loaded boxes to the foundry-room by means of a freight elevator; loading the furnaces with scraps of aluminum by throwing pieces ranging from ten to fifteen pounds, by hand, into the melting compartment; and, after the molten metal was poured into moulds by the gang foreman, assisting in moving the moulds away by means of a rod, dumping the ingots from the moulds and stacking them in piles. The temperature in the foundry, as might be expected, was rather high, comparable to foun-

dries of this character; however, to afford some measure of comfort, the foundry workers were clad appropriately to the occasion and were furnished with an ice water cooler by the respondent. On the day in question, Kattack engaged in very little active work during the entire shift, because, being a new man, he had been instructed by his foreman to take things easily and to devote most of his time in watching the experienced men in the performance of their various tasks. During the shift, Kattack was observed by his foreman as well as by several of his fellow-workers, on at least three occasions, to vomit; the first occurrence taking place at six o'clock, the second one at eight o'clock and the third one shortly after nine o'clock. It was during one of these vomiting spells that Kattack appeared pale and weak, perspiring freely and experiencing difficulty in breathing; and that it became necessary for him to leave the foundry room and to go outside in the yard for fresh air. Upon his return he felt somewhat better and indulged quite freely in the drinking of ice water during the night. At the 1:30 A. M. quitting time, Kattack and the other members of the shift left for their respective homes; and in parting, the foreman, Thomas J. Lee, inquired of Kattack how he felt and Kattack replied all right. An hour later he arrived at his home and from the observations of members of his family, who remained up awaiting his arrival home, he appeared gravely ill, possessing a marked pallor, dyspnea or shortness of breath, glassy eyes, sweatty appearance, and vomitus all over his clothing. After being undressed and cleansed, he was put to bed, but, owing to continued pains in the region of the chest and difficulty in breathing, he slept very little during the night. Having shown no improvement in his condition by noon of July 24th, 1940, Dr. Herbert I. Katz, the family physician, was summoned, reaching the bedside about 3:00 P. M. On examination the doctor found the patient acutely ill, noting the following objective findings: dyspnea, pallor of the mucous membranes, respiratory rate of 40, pulse rate of 120, temperature of 97 3/5, blood pressure 110/88; loud rales throughout lungs, and faint heart sounds. He made a diagnosis of coronary thrombosis and arranged for the removal

of the patient to St. Joseph's Hospital in Paterson. A similar diagnosis was made at the hospital upon his admission at 5:00 P. M. on July 24th, 1940, by Dr. Frank F. McDede, under whose care Kattack remained until July 31st, 1940. On the morning of July 31st, 1940, Kattack suffered another acute coronary thrombotic attack, and, failing to respond to treatment, he died at 9:25 A. M. on that day.

A review of the medical testimony in the case discloses a definite contrariety of opinion between the doctors of the respective parties with respect to causal relation. Drs. Herbert I. Katz, Alvin E. Cortese, Adolph Kroll and A. Hobson Davis, appearing in behalf of the petitioner, expressed the opinion that Kattack died from coronary thrombosis, superinduced by over-exertion and heat exhaustion as a result of his employment with the respondent on the night of July 23d, 1940. Testifying in a diametrically opposite vein were Drs. J. Allen Yager, Asher Yaguda and George P. Olcott who appeared as medical experts in behalf of the respondent. While they, too, expressed the opinion that the decedent died as a result of coronary thrombosis, they emphatically denied that the condition was brought about by any act of physical exertion or by heat exhaustion growing out of his employment on the night of July 23d, 1940, insisting that the coronary thrombosis—the initial attack on the night of July 23d, 1940, and the fatal attack on the morning of July 31st, 1940, were solely the end result of a diseased condition in the coronary vessels, to wit: arterio-sclerosis.

In order to make a decision in this case, it becomes necessary to accept the medical view which seems more credible, logical and weighty. In my judgment, I feel that the greater weight of the medical testimony with relation to cause and effect preponderates in favor of the respondent.

The medical authorities are now in accord that coronary thrombosis is a closure or occlusion of one of the coronary arteries or its branches brought about by a diseased condition of the vessel, known as arterio-sclerosis; and that most of coronary thrombotic attacks, fatal or otherwise, come during sleep or during periods of relaxation. It is also conceded that physical over-exertion or strain may be a competent cause in

hastening and precipitating the development of coronary thrombosis. Like any other diseased condition, arteriosclerosis of the coronary vessels may, under certain circumstances, be aggravated by such trauma, resulting in final occlusion.

There are many cases in which the courts of this state have found coronary thrombosis to be due to trauma and in which compensation awards were sustained. *Hertzberg* v. *Kapo Dyeing and Printing Co.,* 19 *N. J. Mis. R.* 201; 18 *Atl. Rep.* (2d) 736; *Wagner* v. *Lewis,* 13 *N. J. Mis. R.* 807; 181 *Atl. Rep.* 394; *Hayes* v. *Bloomfield Church,* 18 *N. J. Mis. R.* 139; 11 *Atl. Rep.* (2d) 417; *Cooke* v. *Cooke & Cole Co., Inc.,* 17 *N. J. Mis. R.* 581; 21 *Atl. Rep.* (2d) 853; *Hentz* v. *Janssen Dairy Co.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409. It is a circumstance, however, to be noted that in each of the above cited cases the uncontroverted evidence reveals a physical collapse while in the act of strain or exertion or occurring a short time thereafter. The only exception thereto is the Hentz case, *supra,* where the physical over-acts and exertion took place in the early morning—victim being a milk delivery man—and the physical collapse occurred in late afternoon of that day.

The evidence in this case, in my opinion, fails to establish that Kattack sustained an accident within the contemplation of the act, or that his death was the result of such accident. It was incumbent upon the petitioner to prove that his death was due to a compensable accident and not to natural causes. Proof of death overtaking a workman either during his accustomed work or following the cessation thereof is insufficient, in and by itself, to constitute such accident. An accident cannot be inferred simply from the death alone. *Armstrong* v. *Union County Trust Co.,* 14 *N. J. Mis. R.* 648; 186 *Atl. Rep.* 522; *affirmed,* 117 *N. J. L.* 423; 189 *Atl. Rep.* 138; *Johnson* v. *Ulster Iron Works,* 9 *N. J. Mis. R.* 239; 153 *Atl. Rep.* 95; *affirmed,* 109 *N. J. L.* 267; 160 *Atl. Rep.* 635.

Viewed in the light most favorable to the petitioner, the evidence merely discloses that the few tasks performed by Kattack in pushing around moulds during the night in ques-

tion, together with the heat and working conditions surrounding his employment, were too strenuous for him to withstand and caused him to become ill—a man who had been without employment for three months just prior to his hire by the respondent and who had just recently recovered from a siege of pneumonia.

Upon carefully considering the entire evidence in this case, I am satisfied that the petitioner has failed to sustain the burden of proof in establishing that the death of her husband, Najeib Kattack, resulted from an accident arising out of and in the course of his employment. I am not unmindful of the many decisions in this state, declaring that the Workmen's Compensation Act is remedial and beneficent in its scope and should therefore be construed liberally. *Gliewe* v. *Mulberry Metal Stamping Works,* 16 *Atl. Rep.* 812; affirming 18 *N. J. Mis. R.* 461 and 14 *Atl. Rep.* (2d) 58; *Sack* v. *Ocean City,* 125 *N. J. L.* 138; 14 *Atl. Rep.* (2d) 517; *affirmed,* 125 *N. J. L.* 509; 17 *Atl. Rep.* (2d) 172; *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512; 6 *Atl. Rep.* (2d) 396. However, such liberal construction was never intended to relieve the claimant of the primary duty to establish proof of a compensable accident as a condition precedent to a right of recovery under the act. This was pointed out recently by Mr. Justice Case, speaking for the Supreme Court when he said: "The principle that the compensation statute is remedial and should be broadly and liberally construed has to do with construction and application and does not operate to distort proofs or to make facts other than as they are." *Grotsky* v. *Charles Grotsky, Inc.,* 121 *N. J. L.* 461; 2 *Atl. Rep.* (2d) 149. It must be remembered at all times that the primary purpose underlying the Workmen's Compensation Law is to compensate employees for industrial injuries sustained as the result of accidents arising out of and in the course of employment. To be liberal in construing what are such accidents is commendable and wise; to extend that liberality beyond reasonable limits by judicial interpretation is unwise and arbitrary.

This is a case where human impulses compel one to go the limit to palliate in some small measure the unfortunate cir-

cumstances of the present petitioner—widowed and left destitute with seven small children, and which make a person regret not being possessed with power enough to believe what seems far from warranted by the evidence in the case.

It is, therefore, * * * ordered that the petition be and the same is hereby dismissed.

JOHN J. STAHL,
*Deputy Commissioner.*